### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**SOUND ENERGY**
**COMPANY, INC.,** *et al.,*

      **Plaintiffs,**

                                 **Civil Action 2:18-cv-1771**
      **v.**                         **Magistrate Judge Elizabeth P. Deavers**

**ASCENT RESOURCES –**
**UTICA, LLC,** *et al.,*

      **Defendants.**

## OPINION AND ORDER

Plaintiffs, Sound Energy Company, Inc. ("Sound Energy"), Bruce A. Levengood, Robert F. Timmerman, Michael L. Demattio, Charles A. Baker, and Cassandra McCune, Individually and as Executor of the Estate of Michael McCune, bring this action asserting claims against Defendants Ascent Resources – Utica, LLC ("Ascent") and Carrizo (Utica) LLC ("Carrizo") arising out of various oil and gas leases covering properties in Guernsey County, Ohio.

With the consent of the parties and by Order of Reference (ECF No. 10), pursuant to 28 U.S.C. § 636(c), this matter is before the Court for consideration of the parties' summary judgment briefing:  Plaintiffs' Motion for Partial Summary Judgment (ECF No. 41) ("Plaintiff's Motion"); Defendant Carrizo (Utica) LLC's Motion for Summary Judgment (ECF No. 43) ("Carrizo's Motion"); and Defendant Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 44) ("Ascent's Motion").[1]  Each Motion has been fully briefed and is ripe

---

[1] Ascent requested oral argument in the captions of some of its summary judgment briefing.  (*See* ECF Nos. 44, 68, 72.)  Neither Plaintiffs nor Carrizo requested oral argument.  (*See* ECF Nos.

for review. (*See* ECF Nos. 42, 67-70, 73-75.)

This matter also is before the Court for consideration of Plaintiffs' Motion to Strike Portions of Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 71) (the "Motion to Strike"). Defendants did not formally respond to the Motion to Strike, but Ascent filed a Notice of Filing of Table of Contents to its Motion for Summary Judgment Against Plaintiffs which appears to respond to some of the concerns set forth in the Motion to Strike. (ECF No. 72.) To the extent Ascent's filing constituted a response, Plaintiffs did not file a Reply, and the Motion to Strike is therefore ripe for review.

For the following reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**; Defendant Carrizo (Utica) LLC's Motion for Summary Judgment (ECF No. 43) is **GRANTED**; and Defendant Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 44) is **GRANTED IN PART**, as to Counts Four, Five and Seven, and **DENIED IN PART WITHOUT PREJUDICE** to refiling as to Counts One and Two. Additionally, Plaintiffs' Motion to Strike Portions of Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 71) is **DENIED**.

## I. FACTUAL BACKGROUND

This case arises out of a number of oil and gas leases for properties throughout Guernsey County, Ohio. Some of the leases date back to the 1960s and 1970s, while others were only

---

41, 42, 43, 67, 69, 70, 73, 75.) **Error! Main Document Only.**Pursuant to S.D. Ohio Civ. R. 7.1(b)(2), the Court will hold oral arguments if "it is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented." Ascent did not expand on its request for oral argument, and accordingly has not demonstrated that this matter rises to a level of complexity necessary to justify oral argument. Moreover, having reviewed the issues involved in the subject briefing, the Court finds that oral argument is not essential to the fair resolution of this matter. Accordingly, Ascent's request for oral argument is **DENIED**.

created in the past ten years.  The transfer history of these leases is largely not in dispute.  The

parties' respective rights under the subject leases, on the other hand, remain disputed.  To

properly frame the parties' disputes, the Court will first establish the timeline of when the parties

created and transferred the subject leases, and then set forth the undisputed facts regarding how

the parties have performed under the subject leases.

**A.      The Parties' Creation and Transfers of the Subject Leases**

**1.      2012:  Plaintiffs Own the Sound Energy Leases and Assign Themselves
          Overriding Royalty Interests**

Sound Energy is an oil and gas exploration company which owns numerous oil and gas

leases covering real property throughout Ohio.  (ECF No. 18 at PAGEID # 578, ¶ 10.)  In 2012,

Sound Energy, together with five individuals, Plaintiffs Levengood, Timmerman, Demattio,

Baker, and McCune (collectively, the "Individual Plaintiffs"), jointly owned eighteen (18) oil

and gas leases covering lands in Guernsey County, Ohio (the "Sound Energy Leases").  (ECF

No. 59-1 at PAGEID ## 3428-3429; *see also* ECF No. 59-1 at PAGEID ## 3403-3426; ECF No.

52 at PAGEID # 2709.)[2]   The Sound Energy Leases, identified below by the original Lessors'

names, are the subject of this case:

- Wayne A. Dorst (the "Dorst Lease");

- Rex. C and Cecilia Murray (the "Murray Lease");

- Roland B. and Alicia Estep (the "Estep Lease");

- Fred & Irene Montgomery (the "Montgomery Lease");

- Marguerite Bond (the "M. Bond Lease");

---

[2] As discussed below, the Parties submitted only eight (8) of the eighteen (18) Sound Energy
Leases for the Court's review:  the Downerd Lease (ECF No. 59-1 at PAGEID ## 3403-3406);
the K. and B. McClelland Lease (ECF No. 59-1 at PAGEID ## 3407-3410); the Murray Lease
(ECF No. 59-1 at PAGEID ## 3411-3414); the D. McClelland Lease (ECF No. 59-1 at PAGEID
## 3415-3418); the J. and M. McElhaney Lease (ECF No. 59-1 at PAGEID ## 3419-3420); the
M. Bond Lease (ECF No. 59-1 at PAGEID ## 3421-3422); the Merryman Lease (ECF No. 59-1
at PAGEID ## 3423-3424); and the Angle Lease (ECF No. 59-1 at PAGEID ## 3425-3426).

3

- Lee R. and Kathleen Angle (the "Angle Lease");

- John and Martha McElhaney (the "J. and M. McElhaney Lease");

- Lewis R. and Ferna E. Hibbs (the "Hibbs Lease");

- John J. and Evelyn L. Pribonic (the "Pribonic Lease");

- John A. and Martha McElhaney (the "J.A. and M. McElhaney Lease");

- William F. and Ruth McCormick (the "McCormick Lease");

- Dell J. Merryman (the "Merryman Lease");

- Lewis W. Latham, et al. (the "Latham Lease");

- Eugene and Janet Bond (the "E. and J. Bond Lease");

- Kenneth G. and Bernice McClelland (the "K. and B. McClelland Lease");

- Walter H. Baird (the "Baird Lease");

- Donald McClelland (the "D. McClelland Lease"); and

- Glenn B. and Lauretta Downerd (the "Downerd Lease").

(*See* ECF No. 59-1 at PAGEID # 3429.)

On June 25, 2012, Sound Energy assigned to each Individual Plaintiff a working interest in the Sound Energy Leases. (ECF No. 59-1 at PAGEID ## 3441-3442.) Also on June 25, 2012, Sound Energy assigned to each Individual Plaintiff an overriding royalty interest ("ORRI") in the Sound Energy Leases. (*Id.* at PAGEID ## 3472-3475 (the "ORRI Assignment").) Critically, the ORRI Assignment contained language that the ORRI applied to the Sound Energy Leases "and any replacement or substitutes therefor." (*Id.* at PAGEID # 3472.) The ORRI Assignment further provided that Plaintiffs' ORRI was "limited to and only insofar as such relates to or includes the Geologic Formation," which was defined as "all subsurface depths from the bottom [of] the Clinton formation to the center of the earth." (*Id.*)[3]

---

[3] The interests in that portion of the geological formation are referred to by the Parties as "Deep Rights" and/or "Deep Horizons." The Court will refer to them as "Deep Horizons." Relatedly, the interests in the portion of the geological formation above the Deep Horizons are referred to by the Parties as "Shallow Rights" and/or "Shallow Horizons." The Court will refer to them as "Shallow Horizons."

2.      **2012, 2014:  Plaintiffs Obtain Amendments and Ratifications of Some of the Sound Energy Leases**

In late 2012, Plaintiffs obtained amendments and ratifications of three of the Sound Energy Leases.  (ECF No. 59-1 at PAGEID ## 3477-3485 (regarding the Downerd Lease); 3529-3546 (regarding the J. and M. McElhanney Lease and the Murray Lease) (the "2012 Amendments and Ratifications").)  In May 2014, Plaintiffs obtained amendments and ratifications of three more of the Sound Energy Leases.  (ECF No. 59-1 at PAGEID ## 3486-3528 (regarding the Merryman Lease, the Angle Lease, and the M. Bond Lease) (the "2014 Amendments and Ratifications").)  The 2012 Amendments and Ratifications and the 2014 Amendments and Ratifications were substantially similar, in that they added pooling provisions to the subject Sound Energy Leases in anticipation that Plaintiffs would then assign portions of the subject Sound Energy Leases to Carrizo.  (ECF No. 50 at PAGEID # 2343.)

Of note, each of the 2012 Amendments and Ratifications and the 2014 Amendments and Ratifications contained language that each subject lease was "currently held by production on the Leased Premises or on lands pooled therewith . . . and it is the desire of the Parties to modify and amend the Lease to more prudently investigate, explore, prospect, and drill for, develop and produce the Leased Premises for oil and gas and prevent any future disputes, and to also ratify and confirm the Lease[.]"  (*See* ECF No. 59-1 at PAGEID ## 3479 (regarding the Downerd Lease); 3493 (the Merryman Lease); 3502 (the Angle Lease); 3512, 3523 (the M. Bond Lease), 3531 (the J. and M. McElhaney Lease); 3540 (the Murray Lease).)

3.      **2014-2016:  Carrizo Obtains Working Interests in the Deep Horizons and Drills Wells Pursuant to the Sound Energy Leases**

On June 11, 2014, after executing the 2014 Amendments and Ratifications, Plaintiffs assigned their working interests in the Deep Horizons from three of the Sound Energy Leases to Carrizo.  (ECF No. 18 at PAGEID ## 608-615 (regarding the M. Bond Lease, the Angle Lease,

and the Merryman Lease).)  In March 2015, Carrizo unitized the Wagler LNG DR Unit (the "Wagler Unit") and drilled two wells, the Wagler 1H and the Wagler 2H, within the Wagler Unit.  (ECF No. 60-1 at PAGEID ## 3703-3720.)  Thereafter, Carrizo produced oil and gas from the Wagler 1H and Wagler 2H wells, for which Carrizo paid Plaintiffs royalties pursuant to the ORRI.  (ECF No. 50 at PAGEID # 2361.)

> **4.      2016:  Carrizo Enters into the Carrizo Leases**

In November and December 2016, Carrizo entered into top leases[4] with landowners of the property subject to five of the Sound Energy Leases:  the Downerd Lease, the Angle Lease, the Merryman Lease, the J. and M. McElhaney Lease, and the Murray Lease.  (ECF No. 18 at PAGEID ## 616-630 (the "Carrizo Leases").)  Operating as top leases, the Carrizo Leases would become effective "immediately upon the expiration, termination, cancellation, surrender, release, forfeiture or other cessation of the Base Lease[s]," referring to the corresponding Sound Energy Leases.  (*Id.*)

> **5.      2017-2018:  Ascent Obtains Carrizo's Working Interest in the Sound Energy Leases and Carrizo's Interest in the Carrizo Leases; Ascent Enters into the Ascent Leases; and Ascent Operates the Wagler Unit and the Hoop Unit**

In November 2017, Carrizo assigned its interests in several oil and gas leases to Ascent. (ECF No. 61-1 at PAGEID ## 3843-3947 (the "2017 Assignment").  Through the 2017 Assignment, Ascent acquired the Carrizo's working interest in the Deep Horizons from the Sound Energy Leases, including Carrizo's working interest in the Wagler Unit, and Carrizo's interest in the Carrizo Leases.  (*Id.*)  Ascent then entered into five additional top leases.  (ECF No. 62-1 at PAGEID ## 3960-4051 (the "Ascent Leases").)

---

[4] As noted by Carrizo, "[t]op leases are 'leases granted by landowners during the existence of another mineral lease that becomes effective if and when the existing lease expires or is terminated.'"  (ECF No. 43 at PAGEID # 1102 (citing 38 Am. Jur. 2d *Gas & Oil* § 52 (2019).)

Accordingly, by the end of 2017, Ascent held the working interest in the Deep Horizons from some of the Sound Energy Leases (including the working interest in the Wagler Unit),[5] the full interest in the Carrizo Leases, and the full interest in the Ascent Leases.  On January 4, 2018, Ascent unitized another oil and gas well unit, the Hoop LND GR Unit (the "Hoop Unit"), on property that was covered by the Ascent Leases and the Carrizo Leases.  (ECF No. at 62-1 at PAGEID ## 4053-4064.)  In February and March of 2018, Ascent drilled wells within the Hoop Unit and began producing oil and gas from the Hoop Unit shortly thereafter.  (*See id.* at PAGEID ## 4070-4074.)

**B.     The Parties' Performance under the Subject Leases**

Additional historical information, beyond the above timeline of the relevant leases, is critical to understanding the parties' performance under the subject leases.

> **1.     At Least Eight[6] of the Sound Energy Leases Are in Secondary Terms Which Require Conditions to be Met to Avoid Expiration**

At least eight[6] of the Sound Energy Leases date back to the 1960s and 1970s.  (*See* ECF No. 59-1 at PAGEID ## 3403-3426.)  Although the primary term of these Sound Energy Lease varies, each of these Sound Energy Leases provides secondary terms, which means the leases would remain effective so long as certain express conditions are met.[7]  These conditions are set forth in the "habendum" provision of each Sound Energy Lease, and the eight Sound Energy Leases that have been produced do ***not*** have identical "habendum" clauses.  (*See id.*)

---

[5] There is no dispute that Ascent has maintained production of oil and gas from the Wagler Unit and has paid Plaintiffs royalties pursuant to the ORRI.  (ECF No. 44 at PAGEID # 1303, n.4.)

[6] The Court is only able to review eight (8) of the eighteen (18) Sound Energy Leases.  (*See* ECF No. 59-1 at PAGEID 3403-3426.)

[7] The Court will not speculate as to the contents of the remaining Sound Energy Leases.  *Davis v. Sun Oil Co.*, 929 F. Supp. 1077, 1082 (S.D. Ohio 1996), *aff'd*, 148 F.3d 606 (6th Cir. 1998) ("Although this Court could speculate on these issues, such speculation would not provide a proper basis for summary judgment.").

Accordingly, an analysis of a lease's habendum clause would be required to determine whether a given Sound Energy Lease had expired.

Six of these eight Sound Energy Leases were subject to the 2012 Amendments and Ratifications or the 2014 Amendments and Ratifications.  (*See* ECF No. 59-1 at PAGEID ## 3477-3546 (regarding the Downerd Lease, the Merryman Lease, the Angle Lease, the M. Bond Lease, the J. and M. McElhanney Lease, and the Murray Lease).)  The 2012 Amendments and Ratifications or the 2014 Amendments and Ratifications, however, did not grant new primary terms to the subject Sound Energy Leases.  (*Id.*)

### 2. Plaintiffs Have Historically Operated Certain Wells Without Compensation

Ascent contends that four oil and gas wells are at issue in this litigation:  (1) the Dorst # 1 Well (API# 34059217390000), (2) the Camp Estates # 1 Well (API# 34059217430000), (3) the Estep # 1 Well (API# 34059217600000), and (4) the Downerd # 1 Well (API# 3405921744000) (collectively, the "Londonderry Wells").  (ECF No. 44 at PAGEID # 1300.)  The record shows that historically, certain Individual Plaintiffs have volunteered, without compensation, to pump the Londonderry Wells on a regular basis.  (*See* ECF No. 52 at PAGEID ## 2713-2714, 2720.)  Plaintiff DeMattio testified that Plaintiffs continue to operate the Londonderry Wells "for nothing, but we make money on other wells."  (ECF No. 52 at PAGEID # 2720.)

### 3. Ascent Has Refused to Pay Plaintiffs Royalty Payment for Wells Subject to Sound Energy Leases Which Ascent Believes Have Expired

On October 20, 2017, prior to obtaining Carrizo's working interest in the Deep Horizons from the Sound Energy Leases, Ascent sent Carrizo a letter advising Carrizo of its belief that certain Sound Energy Leases contained title defects for at least one of three reasons:  (1) the "underlying title of the Lessor"; (2) the "lack of sufficient production to hold the Leases"; or (3) the "failure to make payments pursuant to the Lease."  (ECF No. 62-1 at PAGEID ## 3951-

3958.) In so doing, Ascent, stated its position that at least some of the Sound Energy Leases had expired for failing to produce oil or gas "in paying quantities," a condition Ascent contends was set forth in the habendum provision of the relevant Sound Energy Leases.

Ascent reiterated this belief on April 11, 2018, after it acquired Carrizo's working interest in the Deep Horizons from the Sound Energy Leases and Carrizo's interest in the Carrizo Leases. (ECF No. 62-1 at PAGEID ## 4066-4068.) On that date, Ascent sent notice letters to certain lessors of the Sound Energy Leases, the Ascent Leases, and the Carrizo Leases, advising them of Ascent's position that the "base lease" (i.e., the applicable Sound Energy Lease) had expired, and that "the Top Lease" (i.e., the applicable Carrizo Lease or Ascent Lease) "has become the operative lease" for property related to the Hoop Unit. (*Id.*) Operating under the conclusion that Plaintiffs' ORRI had expired, Ascent proceeded to produce from the Hoop Unit without paying Plaintiffs royalties for the Hoop Unit's production in 344 acres previously subject to the Sound Energy Leases. (ECF No. 42 at PAGEID # 1030 ("Ascent has used approximately 344 acres of Sound Energy Lease acreage in the Hoop Unit but is refusing to recognize Plaintiffs' ORRI in that acreage.").)

## II. PROCEDURAL BACKGROUND

Plaintiffs initiated this action in the Court of Common Pleas of Guernsey County, Case No. 18-OG-638, on November 13, 2018. (*See* ECF No. 2.) On December 21, 2018, however, Ascent removed this action to this Court under 28 U.S.C. § 1332 and 28 U.S.C. § 1441(a). (ECF No. 1.) On January 29, 2019, the parties filed a Rule 26(f) Report and indicated that they consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c). (ECF No. 9.) Accordingly, on January 30, 2019, this case was referred to the Undersigned for the conduct of all further proceedings. (ECF No. 10.)

On April 1, 2019, Plaintiffs filed a First Amended Complaint asserting seven causes of action: Quiet Title (against both Defendants); Breach of Contract (against Ascent); Breach of Contract (against Carrizo); Slander of Title (against Ascent); Tortious Interference (against Ascent); Tortious Interference (against Carrizo); and Unjust Enrichment (against both Defendants). (ECF No. 18.) On April 6, 2020, the parties filed the subject summary judgment motions. (ECF Nos. 41-44.) Each of the summary judgment motions was then fully briefed. (ECF Nos. 67-70, 73-75.)

On May 4, 2020, Plaintiffs filed the Motion to Strike, seeking to strike pages 21 through 24 of Ascent's Motion because Ascent failed to comply with S.D. Ohio Civ. R. 7.2(c).[8] (ECF No. 71.) Ascent did not file a formal response, but instead filed a Notice of Filing of Table of Contents to its Motion for Summary Judgment Against Plaintiffs, in an apparent effort to comply with S.D. Ohio Civ. R. 7.2(a)(3). (ECF No. 72.)

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[8] Plaintiffs repeatedly cite S.D. Ohio Civ. R. 7.2(c) in the Motion to Strike, but it appears that Plaintiffs intend to refer to S.D. Ohio Civ. R. 7.2(a)(3), which provides in relevant part:

> In all cases in which memoranda exceed twenty pages, counsel shall include a combined table of contents and a succinct, clear, and accurate summary, not to exceed five pages, indicating the main sections of the memorandum and the principal arguments and citations to primary authority made in each section, as well as the pages on which each section and any sub-sections may be found.

S.D. Ohio Civ. R. 7.2(a)(3); *compare with* S.D. Ohio Civ. R. 7.2(c) ("Letters to the Court are not permitted unless (1) requested by the Court in a specific matter, or (2) advising the Court of the settlement of a pending matter. All other written communications must be by way of formal motion or memorandum submitted in compliance with these Rules. All letters sent to the Court shall be contemporaneously served upon opposing counsel unless otherwise ordered by the Court.").

entitled to judgment as a matter of law." The burden of proving that no genuine issue of material fact exists falls on the moving party, "and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stransberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (citing *Vaughn v. Lawrenceburg Power Sys.*, 269 F.3d 703, 710 (6th Cir. 2001); *cf.* Fed. R. Civ. P. 56(e)(2) (providing that if a party "fails to properly address another party's assertion of fact" then the Court may "consider the fact undisputed for purposes of the motion").

"Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn*, 439 F. App'x 492, 495-496 (6th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317-324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however 'do more than simply show that there is some metaphysical doubt as to the material facts,'. . . there must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a 'genuine' dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cty.*, 432 F. App'x 435, 441 (6th Cir. 2011) (citations omitted).

In considering the factual allegations and evidence presented in a motion for summary judgment, the Court "must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (internal citation omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stransberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23)

11

## IV. ANALYSIS

Despite the slightly complicated history behind this dispute, the parties' legal positions are rather straightforward. Plaintiffs' primary argument is that they are still entitled to receive royalty payments, because their ORRI has not been (and cannot be) "washed out" by subsequent top leases (i.e., the Carrizo Leases or the Ascent Leases). (*See generally* ECF No. 42.) To the extent Ascent is operating under the Carrizo Leases or the Ascent Leases, Plaintiffs argue such top leases are "replacement or substitutes" for the Sound Energy Leases to which their ORRI is attached. (*Id.*) Ascent, on the other hand, primarily argues that the subject Sound Energy Leases expired pursuant to their own terms due to the Londonderry Wells' failure to produce oil and gas in "paying quantities." (*See generally* ECF No. 44.) Ascent argues that "when the Sound Energy Leases expired, so did the ORRIs and the anti-washout provision upon which Plaintiffs' claims depend." (*Id.*) Finally, Carrizo primarily argues that by Plaintiffs' own admissions, it already paid Plaintiffs in full for the royalties they were owed when Carrizo had interest in the subject leases. (*See generally* ECF No. 43.) Carrizo argues that because it no longer has any interest in the subject leases, it does not owe any more royalty payments to Plaintiffs. (*Id.*)

Plaintiffs assert seven causes of action against Ascent and Carrizo: Quiet Title (against both Defendants); Breach of Contract (against Ascent); Breach of Contract (against Carrizo); Slander of Title (against Ascent); Tortious Interference (against Ascent); Tortious Interference (against Carrizo); and Unjust Enrichment (against both Defendants). (ECF No. 18.) The Court will analyze each of these causes of action in turn, beginning with Plaintiffs' breach of contract claims.

## A.    Breach of Contract Claims (Counts Two and Three)

Plaintiffs assert separate claims for breach of contract against Ascent (Count Two) and Carrizo (Count Three).  (ECF No. 18 at PAGEID ## 585-587, ¶¶ 56-69.)  First, Plaintiffs allege that "Ascent has breached the parties' contract by entering into the Ascent Leases and by obtaining the Carrizo Leases"; "Ascent's refusal to recognize that the Plaintiffs' ORRI is valid and enforceable as to all of the Sound Energy Leases, the Carrizo Leases, and the Ascent Leases constitutes a breach of contract"; and "Ascent's refusal to recognize that the Plaintiffs' ORRI is valid and enforceable as to all of the Sound Energy Leases, the Carrizo Leases, and the Ascent Leases contained within the Well Units constitutes a breach of contract."  (*Id.* at ¶¶ 59-61.)  As to Carrizo, Plaintiffs allege that "Carrizo has breached the parties' contract by entering into the Carrizo Leases and by assigning the Carrizo Leases to Ascent."  (*Id.* at ¶ 67.)

To prove a breach of contract under Ohio law, a plaintiff must prove four elements: (1) that a contract existed; (2) the plaintiff performed; (3) the defendant breached; and (4) the plaintiff suffered damages as a result of the breach.  *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006).  A plaintiff must prove all four elements to prevail on their breach of contract claim:  if, for example, a plaintiff cannot show breach by the defendant, its entire breach of contract claim fails.  *See Asset Mgmt. One LLC v. U.S. Bank Nat. Ass'n*, 569 F. App'x 438, 441 (6th Cir. 2014) ("Because Plaintiff must show all four elements, if Plaintiff cannot show element three, its entire breach of contract claim fails.").

### 1.    Ascent (Count Two)

This Court has defined an ORRI as "a fractional interest in the gross production of oil and gas under a lease in addition to usual royalties paid to the lessor, free of any expense for exploration, drilling, development, operating, marketing and other costs incident to the

production and sale of oil and gas produced from the lease." *Talmage as Tr. of Ralph W. Talmage Tr. v. Bradley*, 377 F. Supp. 3d 799, 809 (S.D. Ohio 2019), *reconsideration denied*, No. 2:17-CV-544, 2020 WL 64008 (S.D. Ohio Jan. 7, 2020) (citing *GM Gas Exploration, Inc. v. McClain*, 4th Dist. Athens No. 1438, 1991 WL 163644, *8, 1991 Ohio App. LEXIS 4083, *22 (Aug. 13, 1991)). The Court has extended this definition to hold that an ORRI "is an interest carved out of the lessee's share of the oil and gas, ordinarily called the working interest, as distinguished from the owner's reserved royalty interest." *Id.* (citing *Meeker v. Ambassador Oil Co.*, 308 F.2d 875 (10th Cir. 1962)). Since ORRIs are interests in an oil and gas lease, an ORRI "does not exist independent from the oil and gas lease" to which it is attached. *Id.*; *see also McClain*, 1991 WL 163644, at *9 ("Ordinarily, an overriding royalty reserved in an assignment of a lease does not survive the termination of the assigned lease.") (internal citation omitted).

"Under Ohio law, an oil and gas lease constitutes a contract." *McClain*, 1991 WL 163644, at *4 (citing *Linn, et al. v. Wehrle, et al.,* 35 Ohio App. 107 (1928)). Accordingly, the Court will apply the general rules of contract interpretation to the ORRI Assignment at issue in this case. *See Shanesville Invs. LLC v. Eclipse Res. I, LP*, 358 F. Supp. 3d 665, 669–70 (S.D. Ohio 2018) ("[I]n Ohio, an oil and gas lease is no different than any other contract."); *see also Phillips Exploration, Inc. v. Reitz*, No. 2:11-cv-920, 2012 WL 6594915, at *3 (S.D. Ohio Dec. 18, 2012) (in Ohio, an oil and gas lease "is a contract subject to traditional rules of interpretation and construction"); *Benzel v. Chesapeake Exploration, LLC*, No. 2:13-cv-280, 2014 WL 4915566, at *4 (S.D. Ohio Sept. 30, 2014) ("Under Ohio law . . . oil and gas leases are contracts subject to the well settled rules of contract construction and interpretation").

Here, the parties appear to agree that Plaintiffs' ORRI was assigned to each of the Sound Energy Leases, and would apply to "any replacement or substitute thereof." (*See* ECF No. 44 at

14

PAGEID ## 1301-1302 ("The ORRI Assignment also included language that the ORRI applied not only to the Sound Energy Leases, but to 'any replacement or substitute thereof[.]'").)  There also is no dispute that Plaintiffs are entitled to royalty payments under their ORRI, but only if a given Sound Energy Lease (to which the ORRI is attached) has not expired or been "replace[d] or substitute[d]."  Ascent recognizes this fact, for example, by continuing to pay Plaintiffs royalties related to the Wagler Unit.  (*See* ECF No. 44 at PAGEID # 1303,  n.4 ("No dispute exists as to Plaintiffs' ORRI on all of the Sound Energy Leases within the Wagler Unit—Ascent honors the same because the wells holding those leases by production were producing in paying quantities.")

Thus, the dispositive question is whether the Sound Energy Leases related to the property on which Ascent now operates the Hoop Units have expired, or been "replace[d] or substitute[d]" by the Carrizo Leases or the Ascent Leases.  Because this is an affirmative defense to Plaintiffs' breach of contract claim, Ascent carries the burden of proving it.  *Rudolph v. Allstate Ins. Co.*, No. 2:18-CV-1743, 2020 WL 6873415, at *1 (S.D. Ohio Nov. 23, 2020) ("Even if a valid contract is proven to exist, the defendant may raise an affirmative defense; the burden of proving that affirmative defense is on the defendant.") (citing *MatchMaker Internatl., Inc. v. Long*, 100 Ohio App.3d 406, 408, 654 N.E.2d 161 (1995)).

Ascent argues that "there is no question that under Ohio law the Londonderry Wells failed to produce in paying quantities, meaning the Sound Energy Leases expired per their habendum clauses, which required continuous paying-quantities production."  (ECF No. 44 at PAGEID # 1306.)  Plaintiffs respond that "Ascent cannot obtain summary judgment on its paying quantities affirmative defense because said defense is irrelevant and/or Ascent failed to meet its burden of proof on the same."  (ECF No. 69 at PAGEID # 4143.)  While the Court does

not agree that Ascent's paying quantities affirmative defense is irrelevant, the Court does agree that Ascent has failed to meet its burden of proof.

The Court is unable to meaningfully consider the parties' arguments on Count Two at this time, because the parties have failed to submit sufficient information for the Court to determine which Sound Energy Leases are related to the Londonderry Wells. As discussed above, Ascent only directed the Court to the fact that there are eighteen (18) Sound Energy Leases. (ECF No. 44 at 1299 (citing ECF No. 59-1 at PAGEID ## 3429).) While Ascent purported to attach all of the Sound Energy Leases to Ascent's Motion, however, it only produced eight (8) of the eighteen (18) Sound Energy Leases for the Court's review. (ECF No. 59-1 at PAGEID ## 3403-3426 (including the Downerd Lease, the K. and B. McClelland Lease, the Murray Lease, the D. McClelland Lease, the J. and M. McElhaney Lease, the M. Bond Lease, the Merryman Lease, and the Angle Lease)[9].) The Court is therefore unable to review the following ten (10) Sound Energy Leases: the Dorst Lease, the Estep Lease, the Montgomery Lease, the Hibbs Lease, the Pribonic Lease, the J.A. and M. McElhaney Lease, the McCormick Lease, the Latham Lease, the E. and J. Bond Lease, and the Baird Lease.[10] (*See* ECF No. 59-1 at PAGEID # 3429.)[11]

The fact that Ascent only produced eight of the Sound Energy Leases may not have mattered, if Ascent had tied any of the Produced Leases to the Londonderry Wells which Ascent

---

[9] These eight Sound Energy Leases are hereafter referred to as the "Produced Leases."

[10] These ten Sound Energy Leases are hereafter referred to as the "Missing Leases."

[11] Complicating the matter further, only six (6) of the eight (8) Produced Leases were modified and ratified by the 2012 Amendments and Ratifications and/or the 2014 Amendments and Ratifications. (*See* ECF No. 59-1 at PAGEID ## 3479 (regarding the Downerd Lease), 3493 (the Merryman Lease), 3502 (the Angle Lease), 3512, 3523 (the M. Bond Lease), 3531 (the J. and M. McElhaney Lease), 3540 (the Murray Lease).) While the parties dispute whether the 2012 Amendments and Ratifications and/or the 2014 Amendments and Ratifications granted a new primary term to these six leases, no party states how these six leases relate to the Londonderry Wells, if at all.

argues have failed to produce in paying quantities, triggering expiration of Plaintiffs' ORRI.  But it did not do so.  Accordingly, the Court is left either to guess which Sound Energy Leases are relevant to the Londonderry Wells (which it will not do), or to assume that all of the Sound Energy Leases are relevant.  The absence of the Missing Leases is critical, because it is clear from the Produced Leases that the Sound Energy Leases do not all have identical habendum clauses, which are the critical provisions for analyzing whether a given Sound Energy Lease has expired (as Ascent submits).  Below, for example, are the relevant habendum clauses from the Produced Leases:

- Downerd Lease (ECF No. 59-1 at PAGEID ## 3403-3406):  "This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee **for a term of [FIVE] years and so much longer thereafter either (1) as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and gas, or (2) as gas shall be injected, stored or held in storage, or removed into, in and from any sands, strata or formations underlying the premises**."

- K. and B. McClelland Lease (ECF No. 59-1 at PAGEID ## 3407-3410):  "[T]he said Lessor . . . does hereby grant unto the Lessee all of the oil and gas and/or the constituents of either, in and under the lands hereinafter described, together with the exclusive rights to drill for, produce and market oil and gas and their constituents and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to possess, use and occupy so much of said premises as is necessary and convenient in removing the above named products therefrom by pipe lines or otherwise **for a term of [5] years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon, or operations are maintained on, all of that certain tract of land** . . . ."

- Murray Lease (ECF No. 59-1 at PAGEID ## 3411-3414):  "This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee **for a term of [FIVE] years and so much longer thereafter either (1) as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and gas, or (2) as gas shall be injected, stored or held in storage, or removed into, in and from any sands, strata or formations underlying the premises**."

- D. McClelland Lease (ECF No. 59-1 at PAGEID ## 3415-3418):  "[T]he said Lessor . . . does hereby grant unto the Lessee all of the oil and gas and/or the constituents of either, in and under the lands hereinafter described, together with the exclusive rights to drill for, produce and market oil and gas and their constituents and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to possess,

use and occupy so much of said premises as is necessary and convenient in removing the above named products therefrom by pipe lines or otherwise **for a term of [5] years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon, or operations are maintained on, all of that certain tract of land** . . . .”

- J. and M. McElhaney Lease (ECF No. 59-1 at PAGEID ## 3419-3420): “[T]he said Lessor . . . does hereby grant unto the Lessee all of the oil and gas and/or the constituents of either, in and under the lands hereinafter described, together with the exclusive rights to drill for, produce and market oil and gas, and their constituents and also the right to enter thereon at all times for the purpose of drilling and operating for oil, gas and water and to possess, use and occupy so much of said premises as is necessary and convenient in removing the above named products therefrom by pipe lines or otherwise **for a term of ten (10) years and so much longer thereafter as oil, gas, or their constituents are produced in paying quantities thereon, all of that certain tract of land** . . . .”

- M. Bond Lease (ECF No. 59-1 at PAGEID ## 3421-3422): “This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee **for a term of [FIVE] years and so much longer thereafter either (1) as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and gas, or (2) as gas shall be injected, stored or held in storage, or removed into, in and from any sands, strata or formations underlying the premises**.”

- Merryman Lease (ECF No. 59-1 at PAGEID ## 3423-3424): “This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee **for a term of ten (10) years and so much longer thereafter either (1) as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or (2) as the premises shall be operated by the Lessee in the search for oil and gas removed into, in and from any sands, strata or formations underlying the premises**.”

- Angle Lease (ECF No. 59-1 at PAGEID ## 3425-3426): “This lease shall continue in force and the rights granted hereunder be quietly enjoyed by the Lessee **for a term of [FIVE] years and so much longer thereafter either (1) as oil or gas or their constituents shall be found on the premises in paying quantities in the judgment of the Lessee or as the premises shall be operated by the Lessee in the search for oil and gas, or (2) as gas shall be injected, stored or held in storage, or removed into, in and from any sands, strata or formations underlying the premises**.”

(ECF No. 59-1 at PAGEID ## 3403-3426 (emphasis added).)

In Ascent’s Motion, Ascent highlights the above language from the Merryman Lease and argues that “each of the Sound Energy Leases was in its secondary term and required continuous production in paying quantities from the existing conventional wells to avoid expiration.” (ECF No. 44 at PAGEID ## 1299.) While each of the Produced Leases was in its secondary term, it is

incorrect to state that each "required continuous production in paying quantities . . . to avoid expiration." (*Id.*) By jumping to this faulty conclusion, Ascent disregards the fact that seven of the eight Produced Leases (including the Merryman Lease cited by Ascent) contain provisions that keep the respective leases in effect so long as "the premises shall be operated . . . in the search for oil and gas" or "operations are maintained" on the subject land. (*See* ECF No. 59-1 at PAGEID ## 3403-3426 (Downerd Lease; K. and B. McClelland Lease; Murray Lease; D. McClelland Lease; M. Bond Lease; Merryman Lease; and Angle Lease).) Of the Produced Leases, only the J. and M. McElhaney Lease does not include such language in the habendum clause. (*Id.* at PAGEID ## 3419-3420.) Of note, however, Ascent has not argued (let alone proven) that the Londonderry Wells were operated subject to the J. and M. McElhaney Lease.

To that end, neither party has identified under which Sound Energy Leases the Londonderry Wells were operated. Ascent provides only the following information about the Londonderry Wells:

> Four of these wells are at issue in this litigation: (1) the Dorst # 1 Well (API# 34059217390000), (2) the Camp Estates # 1 Well (API# 34059217430000), (3) the Estep # 1 Well (API# 34059217600000), and (4) the Downerd # 1 Well (API# 3405921744000) (collectively, the "Londonderry Wells").

(ECF No. 44 at PAGEID # 1300.).[12] The Court can deduce that the "Dorst # 1 Well" may relate to the Dorst Lease, the "Estep # 1 Well" may relate to the Estep Lease, and the "Downerd # 1 Well" may relate to the Downerd Lease, but it is not this Court's job to guess. *Davis*, 929 F. Supp. at 1082 ("Although this Court could speculate on these issues, such speculation would not

---

[12] Complicating matters even further, Ascent argues that there are "ten parcels at issue" in this case without any further explanation. (ECF No. 44 at PAGEID # 1303, n.2 (Noting that the 2012 Amendments and Ratifications and the 2014 Amendments and Ratifications "cover eight of the ten parcels at issue.").) Without more, the Court does not know what parcels are at issue; how these parcels relate to the Londonderry Wells; or, most importantly, which Sound Energy Leases are implicated.

provide a proper basis for summary judgment."). Regardless, even if those assumptions were correct, the Court still would not know which Sound Energy Lease(s) relate to the "Camp Estates # 1 Well," and the fact remains that the Dorst Lease and Estep Lease are among the Missing Leases which the Court cannot review. Simply put, there is no way for the Court to provide a meaningful summary judgment analysis on a breach of contract claim that may be tied to the Londonderry Wells' production without knowing under which leases the Londonderry Wells were operated, especially if the Court is not able to review the habendum provision of such leases. If the Sound Energy Leases applicable to the Londonderry Wells contain habendum language similar to the Merryman Lease, then the Court's analysis will be much different than if the habendum language resembles the other Produced Leases. Unfortunately, the Court cannot make that analysis without knowing the language of the operative lease(s).[13]

The Court understands that the parties have been living with these issues and facts for the past several years, and have developed a working understanding of which leases, wells, and parcels are at issue. But this familiarity does little to assist the Court in evaluating the evidence supporting or disproving the claims at issue. The Court cannot rule on summary judgment with such an incomplete presentation of the record. As the United States Court of Appeals for the Second Circuit has discussed, however, the Court has "numerous alternative available options" for how to proceed under such circumstances:

> Of course, a district court is not compelled to dismiss or deny an inadequately supported motion for summary judgment. The court has numerous alternative available options. Among them, it may give the moving defendant time to make additional submissions that would cure the deficiency in its papers by citing evidence that shows its entitlement to judgment (with a reasonable opportunity to the plaintiff to respond). *See* Fed. R. Civ. P. 56(e)(1)("[T]he court may ... give an opportunity to properly support or address the fact [that has not been properly

---

[13] For similar reasons, the Court also is not able to analyze whether the Carrizo Leases or Ascent Leases constitute "replacements or substitutes" for the Sound Energy Leases.

supported] ).” Alternatively, if the court is aware of record evidence not cited in the defendant's motion papers that appears to justify grant of summary judgment to the defendant, the court may give notice to the plaintiff citing those portions of the record (with reasonable time to respond) and then grant judgment to the defendant if the plaintiff's response to the court's notice confirms the inadequacy of its evidence or fails to show that there is a genuine dispute as to a material fact. *See* Fed. R. Civ. P. 56(f)(3)(“After giving notice and a reasonable time to respond, the court may ... consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.”). **Or the court may dismiss the defendant's motion without prejudice to its subsequent resubmission with proper support. As provided in Fed. R. Civ. P. 56(e)(4), the court may "issue any other appropriate order."**

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 116 n. 4 (2d Cir. 2017)

(emphasis added). This Court has proceeded under the last such option before, as have others across the country, and it will do so again here. *Joe Hand Promotions, Inc. v. Ingalls*, No. 2:14-CV-1679, 2016 WL 7852525, at *1 (S.D. Ohio Jan. 15, 2016) (“Thus, without a factual basis to determine Defendant's position and/or role and, in turn, to determine whether he is also liable . . . the Court DENIES Plaintiff's motion for summary judgment [] without prejudice to refiling.”) (citing Fed. R. Civ. P. 56(e)(4)); *see also* Fed. R. Civ. P. 56 advisory committee notes to the 2010 amendment (“Subdivision (e)(4) recognizes that still other orders may be appropriate. The choice among possible orders should be designed to encourage proper presentation of the record.”).[14]

Accordingly, both Plaintiffs' Motion and Ascent's Motion are **DENIED WITHOUT PREJUDICE** as to re-filing a motion which cures the defects identified herein with regard to

---

[14] *See also, e.g., Cooper v. Cty. of Camden*, No. 1:15-CV-01244-NLH-JS, 2018 WL 2175766, at *5 (D.N.J. May 11, 2018) (Denying summary judgment without prejudice, and noting that “[w]hile the Court believes that ruling in favor of [Defendant] now would be consistent with the undisputed evidence currently in the record and procedurally within the scope of both the letter and spirit of Rule 56 we will proceed with caution.”); *CIT Bank, N.A. v. Howard*, No. 14CV7470SLTSMG, 2016 WL 6330406, at *8 (E.D.N.Y. Oct. 27, 2016) (“Plaintiff's motion for summary judgment is denied without prejudice to re-filing a motion which cures the defects identified herein.”).

Count Two of Plaintiffs' First Amended Complaint. Should either party choose to re-file a motion for summary judgment as to Count Two,[15] such motion shall be filed on or before **APRIL 23, 2021**, and the briefing shall confirm which of the Sound Energy Leases are relevant to the Londonderry Wells; which of the Sound Energy Leases are relevant to the Carrizo Leases; which of the Sound Energy Leases are relevant to the Ascent Leases; which of the Sound Energy Leases are relevant to the Hoop Unit; which other parcels are at issue, if any, and to which Sound Energy Leases such parcels are subject; and which of the Sound Energy Leases are otherwise relevant to Plaintiffs' breach of contract claim against Ascent. Further, the parties shall attach every Sound Energy Lease cited. The default briefing schedule set forth in Local Rule 7.2(a)(2) shall apply thereafter, and the Court urges the parties to address any of the other discrepancies referenced above, to the extent they are relevant to the breach of contract analysis.

        2.    **Carrizo (Count Three)**

        Plaintiffs' breach of contract claim against Carrizo does not suffer from the same problems as Plaintiffs' breach of contract claim against Ascent, and the Court does not need to reach a decision on Count Two before turning to the summary judgment analysis for Count Three.

        In Plaintiffs' Motion, Plaintiffs argue that Carrizo was "contractually bound to pay Plaintiffs an overriding royalty . . . ," and that "[t]heir failure to do so constitutes a breach of contract, i.e. a breach of the override and the leases at issue." (ECF No. 42 at PAGEID ## 1031, 1039.) Plaintiffs also argue that "Carrizo's actions while it was the owner of the Sound Energy Leases' deep rights have led directly to the present situation, and it has breached its obligations

_____

[15] As discussed below, the determination of Count Two necessarily affects the Court's analysis of Plaintiffs' Quiet Title claim against Ascent (Count One), and any subsequently filed Motion should analyze both of Plaintiffs' remaining claims.

to Plaintiffs and Sound Energy" because "Carrizo went behind the backs of Plaintiffs and Sound Energy and entered into the Carrizo Top Leases."  (*Id.* at PAGEID # 1043.)

In Carrizo's Motion, Carrizo does not dispute that it had a contractual obligation to pay Plaintiffs an ORRI.  Instead, Carrizo argues it did not breach that obligation because "[i]t is undisputed that Carrizo paid all royalties owed to Plaintiffs for the oil and gas it produced before assigning its interest to Ascent, and Carrizo never refused to recognize Plaintiffs' ORRI."  (ECF No. 43 at PAGEID # 1101.)  Citing Plaintiffs' deposition testimony, Carrizo argues that "[b]y Plaintiffs' own admission . . . the amount of the royalties Carrizo should have paid but did not pay is zero, entitling Carrizo to summary judgment on this facet of the breach of contract claim."  (*Id.* at PAGEID # 1104.)  Carrizo further argues that "Plaintiffs are unable to demonstrate that [Carrizo's] actions [by entering into the Carrizo Leases and then assigning those leases to Ascent] are a violation of any contractual duty Carrizo owes to Plaintiffs."  (*Id.*)  Carrizo argues that neither the Sound Energy Leases nor the ORRI assignment constitutes a contract between Plaintiffs and Carrizo, but even if they did, Plaintiff Levengood "conceded at his deposition that neither the Sound Energy Leases nor the ORRI Assignment prohibits Carrizo from entering into top leases or assigning those leases."  (*Id.* at PAGEID # 1105.)

In response to Carrizo's Motion, Plaintiffs argue that "Carrizo ignored its contractual obligations to not attempt to washout Plaintiffs' ORRI by entering into the Top Leases."  (ECF No. 70 at PAGEID # 4259.)  Plaintiff also invokes, for the first time, Asset Purchase Agreements between Plaintiffs and Carrizo, arguing that they "imposed contractual obligations on Carrizo and Carrizo breached the same by attempting to washout Plaintiffs' ORRI."  (ECF No. 70 at PAGEID ## 4259-4260.)  Plaintiffs maintain that "Carrizo's actions breached its obligation to recognize and protect Plaintiffs' ORRI, which includes refraining from taking any action that

23

'appears' to washout the override," and stress that "[w]ithout the actions of Carrizo, Plaintiffs []
would not have needed to bring this lawsuit." (*Id.* at PAGEID # 4262.) Plaintiffs also argue that
Carrizo breached § 7.4.1 of the Asset Purchase Agreements, which "requires Carrizo to
indemnity Plaintiffs and Sound Energy for all losses from the failure to pay royalties associated
with production from the Sound Energy Leases' deep rights," as well as § 8.2, which allows any
party to participate in negotiations related to new leases. (*Id.* at PAGEID # 4263-4265.)
Specifically, Plaintiffs allege that "by cutting Plaintiffs [] out of the negotiations with the
lessors" and "secretly negotiat[ing] replacement leases (the Top Leases)," Carrizo breached § 8.2
of the Asset Purchase Agreements. (*Id.* at PAGEID # 4265.)

  In response to Plaintiff's Motion, Carrizo reiterates that "the record contains no evidence
that Carrizo breached a contractual duty to Plaintiffs" and argues that "Carrizo satisfied any
contractual duty it owed to pay royalties pursuant to Plaintiffs' ORRI, and Plaintiffs have not
demonstrated Carrizo breached any contractual duty by entering into the Carrizo Leases and
assigning them to Ascent." (ECF No. 67 at PAGEID # 4090.) Carrizo specifically argues that
Plaintiffs "do not identify any provision of the alleged contract . . . that prohibits Carrizo from
entering into top leases for the property," and "[w]ithout identifying a contractual provision that
Carrizo breached, Plaintiffs' breach of contract claim fails as a matter of law." (*Id.* at PAGEID
## 4092-4094.) Then, in its Reply brief, Carrizo also argues that in their Opposition to Carrizo's
Motion, "Plaintiffs assert for the first time that Carrizo breached certain provisions of the [Asset
Purchase Agreements]," and the Court should not consider such arguments because Plaintiffs
"should have asserted that theory in their Complaint and in their own Motion for Summary
Judgment." (ECF No. 73 at PAGEID ## 4283-4284.) Regardless, Carrizo argues that Plaintiffs'
new argument fails on its merits, because "Carrizo has paid Plaintiffs all royalties owed" to

discharge its obligations under § 7.4.1 of the Asset Purchase Agreements, and that Plaintiffs

failed to trigger § 8.2 of the Asset Purchase Agreements by failing to provide the required notice

to Carrizo. (*Id.* at PAGEID ## 4284-4286.)

Accordingly, the breach of contract dispute between Plaintiffs and Carrizo centers on

whether Carrizo breached any contractual obligations to Plaintiff, either with regard to the

Plaintiffs' ORRI or by entering into the Carrizo Leases and then assigning those leases to Ascent.

(ECF No. 18 at PAGEID # 587, ¶ 67; *see also* ECF No. 42 at PAGEID # 1039 ("Carrizo . . .

must recognize Plaintiffs' ORRI on 100% of the acreage covered by the Sound Energy Leases,

Carrizo Top Leases, and Ascent Top Leases. Their failure to do so constitutes a breach of

contract, i.e. a breach of the override and the leases at issue.").) In Carrizo's Motion, Carrizo

presents Plaintiffs' own testimony as evidence that "Plaintiffs conceded that Carrizo paid

royalties for all of its production associated with the Sound Energy Leases":

- Plaintiff Baker:

    Q:    Before we move on, actually, **are you aware of any production of oil and gas from the deep rights by Carizzo that you weren't paid for**?

    A:    **No.**

- Plaintiff Levengood:

    Q:    And why do you feel you are rightfully entitled to those overrides [from Ascent]?

    A:    Well, there is an assignment of those interests to myself personally and to the other parties in the complaint. And it has an anti-washout provision in it, and so **we were being paid honorably by Carrizo on other drilling that had been done on those leases.** And when Ascent became the operator of record or whatever you want to call them, they purchased the leases and then drilled wells and ignored us, more or less.

- Plaintiff Levengood:

    Q:    Okay. During the time period that you were receiving royalty payments from Carrizo, **did you have any reason to believe that Carrizo was not paying the full amount that you were owed?**

25

A:     **No.**

Q:     Did you ever have any conversations with anyone from Carrizo where Carrizo refused to recognize your overriding royalty interest?

A:     **No.**

Q:     And I think you said this, but I just want to clarify.  **Do you claim that Carrizo has any obligation to pay royalties for any production that occurred after the effective date of the assignment of the Sound Energy leases to Ascent?**

A:     **No**, I believe the overriding royalties would be then due from the operator of the wells.

(ECF No. 43 at PAGEID # 1104 (citing ECF No. 43-2 at PAGEID # 1136; ECF No. 43-3 at PAGEID # 1242; ECF No. 43-3 at PAGEID ## 1249-1250 (emphasis added)).)  Consistent with this, Plaintiff Levengood also testified that "Carrizo and ourselves had a relationship that was honorably upheld."  (ECF No. 50 at PAGEID # 3255.)  Plaintiffs, however, have failed to present *any* evidence throughout the extensive briefing to create a genuine issue of material fact that Carrizo failed to recognize or pay Plaintiffs the full amount of their ORRI.  Summary judgment is therefore appropriate on this part of Plaintiffs' breach of contract claim.

The breach of contract analysis does not end there, however, as Plaintiffs also allege that Carrizo breached contractual duties by entering into the Carrizo Leases and then assigning those leases to Ascent.  (ECF No. 18 at PAGEID # 587, ¶ 67.)  As Carrizo correctly points out, Plaintiffs again have failed to provide any support, either in law or from the express language of the ORRI Assignment, for their position that Carrizo committed breach by entering into the Top Leases – which *Ascent*, not Carrizo, is using "to claim a washout of Plaintiffs' ORRI."  (ECF No. 70 at PAGEID # 4262 ("If Carrizo had not entered into the Top Leases, Ascent could not be claiming an alleged washout of Plaintiffs' ORRI.").)  Carrizo is not responsible for Ascent's legal arguments, and Plaintiffs have failed to direct the Court to any evidence or persuasive legal

26

authority to the contrary.[16] In fact, it is again Carrizo that provides the only evidence relevant to Plaintiffs' allegation, again from Plaintiff Levengood's deposition:

> Q:    Is there anything in this assignment that prohibits a party to the assignment from taking a top lease on the leases that are covered by this assignment?
>
> A:    I don't think so.

(ECF No. 73 at PAGEID # 4280 (citing ECF No. 43-3 at PAGEID # 1258).) Again, this uncontroverted testimonial evidence confirms that Carrizo is entitled to summary judgment on Plaintiff's claim that Carrizo breached any contractual duties by entering into the Carrizo Leases and subsequently assigning those leases to Ascent.

Finally, and separately, the Court agrees with Carrizo that Plaintiffs have improperly attempted to introduce new theories of liability into the case in response to Carrizo's summary judgment briefing. (ECF No. 73 at PAGEID ## 4283-4288.) Specifically, the Court finds that Plaintiffs' argue for the first time in response to Carrizo's Motion that Carrizo breached certain provisions of the Asset Purchase Agreements. (*See* ECF No. 70 at PAGEID ## 4262-4265.) Carrizo is correct that "[a] party is not entitled to wait until the discovery cutoff date has passed and a motion for summary judgment has been filed on the basis of claims asserted in the original

---

[16] The Court rejects Plaintiffs' unexplained citations to *Allied Erecting & Dismantling Co. v. Anderson Equip. Co.*, 7th Dist. Mahoning No. 99CA79, 2000-Ohio-2563, 2000 WL 1506499, and *Third Fed. S. & L. Assn. of Cleveland v. Formanik*, 8th Dist. No. 103649, 2016-Ohio-7478, 64 N.E.3d 1034. (ECF No. 70 at PAGEID ## 4261-4262; ECF No. 75 at PAGEID # 4324.) While it appears that Plaintiffs cite these cases to support their argument that **Carrizo** "could not take actions to prevent *its own* contractual performance," Plaintiffs then immediately contradict themselves by arguing that "[b]y entering into the Carrizo Top Leases, Carrizo did just that. . . . If **Carrizo** had not entered into the Carrizo Top Leases, **Ascent** could not be claiming an alleged elimination of Plaintiffs' ORRI based on the Defendants' top leases." (ECF No. 75 at PAGEID # 4324 (emphasis added).) Plaintiffs' argument is internally inconsistent, and their reliance on these cases is irrelevant and unpersuasive, especially given the unrefuted testimony (from Plaintiffs) that Carrizo upheld its contractual obligations and never challenged Plaintiffs' ORRI.

27

complaint before introducing entirely different legal theories . . . ." (ECF No. 73 at PAGEID #
4283 (citations omitted).)

    That is exactly what happened here, as Plaintiffs waited until its response to Carrizo's

Motion to argue for the first time that Carrizo had breached certain provisions of the Asset

Purchase Agreements. (ECF No. 70 at PAGEID ## 4262-4265; *see also* ECF No. 75 at PAGEID

## 4325-4327.) Such allegations do not appear in the original state court Complaint (dated

November 13, 2018), or in the Amended Complaint (dated April 1, 2019), and neither pleading

suggests that the Asset Purchases Agreements were relevant to Plaintiffs' breach of contract

claim. (*See* ECF No. 2 at PAGEID # 190, ¶¶ 65-67 ("Plaintiffs and Carrizo are parties to a

binding contract, as evidenced by and embodied in the assignment creating the Plaintiffs' ORRI

and the Sound Energy Leases. . . . Carrizo has breached the parties' contract by entering into the

Carrizo Leases and by assigning the Carrizo Leases to Ascent."); ECF No. 18 at PAGEID ##

586-587, ¶¶ 65-67 (same).) Rather, Plaintiffs waited until May 18, 2020 – over eighteen (18)

months after filing this case – to assert new theories of liability in the middle of summary

judgment briefing. This is wholly improper, as the Sixth Circuit has clearly stated that "[t]o the

extent [a plaintiff] seeks to expand its claims to assert new theories, it may not do so in response

to summary judgment or on appeal." *Bridgeport Music, Inc. v. WM Music Corp.*, 508 F.3d 394,

400 (6th Cir. 2007) (citations omitted).[17] This Court therefore declines to analyze Plaintiffs'

---

[17] *See also Tucker v. Union of Needletrades, Indus. and Textile Employees,* 407 F.3d 784, 788
(6th Cir.2005) ("To permit a plaintiff to do otherwise would subject defendants to unfair
surprise.") (citing *Guiffre v. Local Lodge No. 1124,* No. 90–3540, 1991 WL 135576, at *5 (6th
Cir. July 24, 1991) (unpublished) (refusing to hear claims raised for the first time in opposition to
summary judgment because, "[h]aving received no notice of them, the defendants had no
opportunity to investigate them when they conducted their own discovery"); *EEOC v. J.H. Routh
Packing Co.,* 246 F.3d 850, 854 (6th Cir. 2001) (stating that even under the liberal notice-
pleading regime, the Federal Rules of Civil Procedure still require "that the complaint give the
defendant fair notice of the claim and its supporting facts")).

remaining breach of contract arguments related to the Asset Purchase Agreements, as Plaintiffs failed to timely raise them.

Accordingly, for the above reasons, Carrizo has demonstrated that there is no genuine dispute as to the material facts related to Plaintiffs' breach of contract claim, and it is therefore entitled to judgment as a matter of law on Plaintiffs' breach of contract claim. Accordingly, Plaintiff's Motion is **DENIED** as to Count Three, and Carrizo's Motion is **GRANTED** as to Count Three.

**B.      Tortious Interference Claims (Counts Five and Six)**

Plaintiffs also assert claims for tortious interference against Ascent (Count Five) and Carrizo (Count Six). (ECF No. 18 at PAGEID ## 589-590, ¶¶ 76-89.) Specifically, Plaintiffs allege that Ascent and Carrizo, "without justification, intentionally interfered with Plaintiffs' business relationships and contracts by directly or indirectly soliciting, inducing, and/or procuring those third-parties to breach and/or violate the terms of the business relationships and contracts." (*Id.* at ¶¶ 79, 86.)

Thus, Plaintiffs appear to be asserting two types of tortious interference claims: tortious interference with business relationships and tortious interference with contracts. To establish a claim of tortious interference with a business relationship, a plaintiff must establish: "(1) the existence or the prospect of a business relationship; (2) that defendant knew of the plaintiff's relationship; (3) that defendant intentionally and materially interfered with the plaintiff's prospective relationship; (4) the interference was without justification; and (5) the interference cause the plaintiff to suffer damages." *Wilson v. Chagrin Valley Steel Erectors, Inc.*, No. 2:16-CV-1084, 2018 WL 1512906, at *15 (S.D. Ohio Mar. 27, 2018) (citing *Edwards v. Woodforest Nat'l Bank*, No. 1:11-cv-2205, 2012 WL 1906309, at *4 (N.D. Ohio May 24, 2012)). "The basic

29

principle underlying a claim of tortious interference is that when someone acting without privilege, induces or purposely causes a third party to terminate a business relationship with another, then that person should be held liable for the harm resulting from the terminated relationship." *Id.* (citations omitted).

On the other hand, "in order to recover for a claim of tortious interference with a contractual relationship, 'one must prove (1) the existence of a contract, (2) the wrongdoer's knowledge of the contract, (3) the wrongdoer's intentional procurement of the contract's breach, (4) the lack of justification, and (5) resulting damages.'" *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 942 (S.D. Ohio 2012) (quoting *Kenty v. Transamerica Premium Ins. Co.,* 72 Ohio St.3d 415, 650 N.E.2d 863, at syl. ¶ 2 (1995)).  This Court has held that "[t]he main distinction between tortious interference with a contractual relationship and tortious interference with a business relationship is that interference with a business relationship includes intentional interference with prospective contractual relations, not yet reduced to a contract." *Id.* (citing *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.*, 148 Ohio App.3d 596, 2002–Ohio–3932, 774 N.E.2d 775, at ¶ 23 (2002).).

### 1.     Ascent (Count Five)

In Ascent's Motion, Ascent argues that "[e]ven if the Sound Energy Leases never expired, Ascent did not intentionally procure the breach of the ORRI Assignment," because "Ascent made a good faith determination that the Sound Energy Leases had expired based on publicly reported production from the Londonderry Wells."  (ECF No. 44 at PAGEID ## 1320.) In response, Plaintiffs argue that Ascent procured a breach of the exclusivity clause of the Sound Energy Leases by convincing the lessors to enter into the Top Leases.  (ECF No. 69 at PAGEID # 4148.)  In reply, Ascent stresses that it "did not have the power to washout Plaintiffs' ORRI"

because Plaintiffs "had the power to perpetuate the Sound Energy Leases." (ECF No. 74 at PAGEID # 4298.)

The Court does not need to decide whether any of the Sound Energy Lease expired in order to find that Ascent is entitled to summary judgment on Plaintiffs' unjust enrichment claim, because the Court agrees with Ascent's argument that it could not, and did not, procure a breach of the exclusivity clause of the Sound Energy Leases or affect any of Plaintiffs' business relationships. As Ascent correctly observes, "the act of acquiring the Carrizo Leases and Ascent Leases did not breach of the exclusivity clause in the Sound Energy Leases, because those leases expressly took effect upon the expiration of the Sound Energy Lease." (*Id.*; *see also* ECF No. 73 at PAGEID ## 4280-4281.) The Carrizo Leases and Ascent Leases could not become effective unless the relevant Sound Energy Leases had expired, so Ascent correctly notes that it "did not have the power" to expire the relevant Sound Energy Leases by entering into any top leases. (*Id.*) Ascent's solicitation of the lessors, regardless of Ascent's motive, had no effect on the term of any Sound Energy Leases.

As Plaintiff Levengood testified, entering into top leases like the Carrizo Leases and Ascent Leases is common in the industry, as they allow entities to "be first in line whenever the underlying lease expired." (ECF No. 50 at PAGEID # 2355.) That is exactly what happened here, as the Carrizo Leases and Ascent Leases simply reflected parties trying to be first in line in case the relevant Sound Energy Lease(s) expired. Because doing so had no impact on the expiration of the subject Sound Energy Leases, it cannot constitute tortious interference with a business relationship or contract.

31

For these reasons, Ascent has demonstrated that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law on Plaintiffs' tortious interference claim. Accordingly, Ascent's Motion is **GRANTED** as to Count Five.

### 2. Carrizo (Count Six)

In Carrizo's Motion, Carrizo argues that "Plaintiffs' tortious interference claim fails because Carrizo did not interfere with a contract or business relationship between Plaintiffs and the Landowners, and Carrizo was justified in entering into the Carrizo Leases." (ECF No. 43 at PAGEID ## 1105-1108.) Carrizo highlights Plaintiff DeMattio's testimony that he "[didn't] know that Carizzo interfered with anybody," as well as Plaintiff Levengood's testimony that Carrizo never attempted to stop Plaintiffs from operating the shallow wells or from fulfilling their obligations to the Landowners with regard to the shallow wells. Carrizo argues that based on the terms of the Carrizo Leases it is not clear how the Carrizo Leases could interfere with any contract or business relationship between Plaintiffs and the Landowners. (*Id.*) In response, Plaintiffs argue that "[b]y convincing the lessors to enter into the Top Leases, Carrizo was procuring a breach of the exclusivity clause of the Sound Energy Leases," and "by attempting to washout Plaintiffs' ORRI by entering into the Top Leases . . . and then assigning the Top Leases to Ascent, Carrizo opened the door for Ascent's baseless claim that Plaintiffs' ORRI did not apply to the Top Leases." (ECF No. 70 at PAGEID # 4267.) Plaintiffs argue "Carrizo gave Ascent the ammunition for Ascent to wrongfully breach Plaintiffs' ORRI through non-payment of the same," and therefore tortiously interfered with Plaintiffs' contracts and business relationships. (*Id.*) In Reply, Carrizo argues that "[b]ecause the Carrizo Leases and the Sound Energy Leases could not possibly be in effect at the same time, the Carrizo Leases did not interfere with any 'exclusive' rights," and "[t]herefore, Carrizo did not procure a breach of the

'exclusivity clause' of the Sound Energy Leases."  (ECF No. 73 at PAGEID ## 4280-4281.) Carrizo also maintains that Plaintiffs failed to establish that Carrizo was unjustified in entering into the Carrizo Leases.  (*Id.* at PAGEID # 4281.)

The Court agrees with Carrizo and finds that Plaintiffs have failed to show that Carrizo intentionally interfered with a business relationship or intentionally procured the breach of a contractual relationship, and that even if they had, Plaintiffs have failed to establish that Carrizo's actions were unjustified.  First, the Court is moved by Carrizo's submission of uncontroverted testimony, from Plaintiffs, demonstrating that:  (i) Plaintiff DeMattio "[didn't] know that Carrizo interfered with anybody"; (ii) "[no one] from Carrizo ever attempt[ed] to stop [Plaintiffs] from operation [the] Shallow wells"; (iii) "[no one] from Carrizo [did] anything else to prevent [Plaintiffs] from fulfilling [their] obligations to the landowners with regard to the Shallow wells"; and (iv) Plaintiff Levengood "never felt that [Carrizo] [was] coming in and doing something without [his] permission."  (ECF No. 43 at PAGEID # 1106 (citing ECF No. 43-1 at PAGEID # 1120; ECF No. 43-3 at PAGEID ## 1254-1255.).)  This testimony is powerful on its face, but it becomes even more persuasive given the fact that it is substantially left unrefuted by Plaintiffs.  In response to this critical testimony, Plaintiffs only argue that Carrizo's first example of testimonial evidence is "deceptive" and taken out of context, because Plaintiff DeMattio ultimately testified that he had "limited knowledge" and it was possible that Plaintiff Levengood had "more knowledge."  (ECF No. 70 at PAGEID # 4267 (citing ECF No. 53 at PAGEID # 2733.).)  Even if the Court were inclined to agree (which it is not), Plaintiffs' response is insufficient to create a genuine dispute as to this material fact about whether Carrizo's actions could constitute interference, especially given the rest of the evidence cited by Carrizo from Plaintiff Levengood's deposition.

Indeed, Plaintiffs do nothing to create a genuine dispute as to any material fact related to their tortious interference claim, and instead rely on unpersuasive, and unsupported, arguments regarding the effect, but not the nature, of Carrizo's actions.  (ECF No. 70 at PAGEID # 4267 (Arguing that "Carrizo opened the door for Ascent's baseless claim that Plaintiffs' ORRI did not apply" and "Carrizo gave Ascent the ammunition for Ascent to wrongfully breach Plaintiffs' ORRI[.]").)  Plaintiffs provide no evidence to show that Carrizo "convinc[ed] the lessors to enter into the Top Leases," and even if they had, Plaintiffs have failed to show that such actions could have been responsible for the termination of any of Plaintiffs' business relationships or contracts.

As Carrizo correctly observes, the timing of the Carrizo Leases made it impossible for Carrizo to procure a breach of the "exclusivity clause" of the Sound Energy Leases, because the Carrizo Leases could not possibly be in effect at the same time as the Sound Energy Leases. (ECF No. 73 at PAGEID ## 4280-4281.)  Finally, while Plaintiffs argue that Carrizo's actions "cannot possibly be justified," they fail to present any evidence to combat Carrizo's reliance on Plaintiff Levengood's testimony – which itself justifies Carrizo's actions by confirming that Carrizo's Top Leases "look like belts and suspenders" and that his own company has taken top leases "so [they] would be first in line whenever the underlying lease expired."  (ECF No. 43 at PAGEID # 1107 (citing ECF No. 43-3 at PAGEID ## 1243, 1251-1252.).)  In short, by simply resting on their arguments without presenting any record evidence to combat Carrizo's charges, Plaintiffs have failed to present any genuine dispute as to any material fact in support of their tortious interference claim against Carrizo.

For these reasons, Carrizo has demonstrated that there is no genuine dispute as to these material facts and that it is entitled to judgment as a matter of law on Plaintiffs' tortious interference claim.  Accordingly, Carrizo's Motion is **GRANTED** as to Count Six.

C.      **Unjust Enrichment Claim (Count Seven)**

Finally, Plaintiffs assert a claim for unjust enrichment against both Defendants, "in the alternative to Plaintiffs' breach of contract claims." (ECF No. 18 at PAGEID # 590, ¶¶ 90-93.) Specifically, Plaintiffs allege "Defendants have unjustly enriched themselves at the expense of Plaintiffs, by attempting to increase their financial benefits by entering into the Carrizo Leases and Ascent Leases and assigned or otherwise conveying the same, while attempting to avoid the Plaintiffs' ORRI." (*Id.* at ¶ 92.)

Unjust enrichment is a quasicontractual theory of recovery occurring "'when a party retains money or benefits which in justice and equity belong to another.'" *Dailey v. Craigmyle & Son Farms, L.L.C.*, 177 Ohio App. 3d 439, 449 (Ohio Ct. App. 2008) (quoting *Cooper v. Smith*, 155 Ohio App. 3d 218, 228 (Ohio Ct. App. 2003)); *accord Dixon v. Smith*, 119 Ohio App. 3d 308, 317 (Ohio Ct. App. 1997). "However, absent fraud, illegality, or bad faith, a plaintiff may not recover if the defendant retains the disputed money or benefit under the terms of an agreement between the parties." *Eyerman v. Mary Kay Cosms., Inc.*, 967 F.2d 213, 222 (6th Cir. 1992) (citation omitted).

"'Under the doctrine of unjust enrichment (*i.e.*, *quantum meruit*), a party may recover the reasonable value of services rendered in the absence of an express contract if denying such recovery would unjustly enrich the opposing party.'" *Dailey*, 177 Ohio App. 3d at 449 (*quoting In re Estate of Popov,* No. 02CA26, 2003 WL 22017299, at *4 (Ohio Ct. App. May 21, 2003)). The requisite elements of an unjust enrichment claim are as follows: "'(1) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment.'" *Cook v. Ohio Nat'l Life Ins. Co.*, 961 F.3d 850, 858 (6th Cir. 2020) (*quoting*

*Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183 (Ohio 1984) (quoting *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923 (1938)).

Unjust enrichment is generally precluded where a valid, enforceable contract exists between the parties.  *See Cook v. Home Depot U.S.A., Inc.*, No. 2:06-cv-00571, 2007 WL 710220, at *8 (S.D. Ohio Mar. 6, 2007) ("Ohio law does not allow parties to 'seek damages under quasi-contractual theories of recovery' such as a claim of unjust enrichment when a contract governs the relationship.") (*quoting Davis & Tatera, Inc. v. Gray-Syracuse, Inc.*, 796 F. Supp. 1078, 1085 (S.D. Ohio 1992)).  "However, Ohio law permits that where there is a dispute as to the existence or enforceability of a contract, a party may plead promissory estoppel or unjust enrichment in the alternative."  *Bonner Farms, Ltd. v. Power Gas Mktg. & Transmission, Inc.*, No. 5:04-cv-2188, 2007 WL 2463247, at *14 (N.D. Ohio Aug. 28, 2007) (citation omitted).

### 1.    Ascent (Count Seven)

In Ascent's Motion, Ascent argues that "Plaintiffs did not confer a benefit upon Ascent because they failed to perpetuate the Sound Energy Lease through adequate production from the Londonberry Wells."  (ECF No. 44 at PAGEID # 1319.)  Ascent further argues that Plaintiffs have failed to allege, let alone to demonstrate, "that Ascent obtained the alleged benefit by means of fraud, misrepresentation, or bad faith, a requirement of a claim for unjust enrichment in Ohio."  (*Id.*)  In response, Plaintiffs only argue, in general terms, that Ascent has acted in bad faith, and that Ascent's "access to Plaintiffs and Sound Energy's lessors" was a "great benefit, which Ascent would not have had but for Plaintiffs and Sound Energy."  (ECF No. 70 at PAGEID # 4266.)  In Reply, Ascent cites the fact that it "recognized Plaintiffs' ORRI on other non-expired leases in the Hoop Unit combined with the fact that Plaintiffs alone had the power to

perpetuate production from the Londonderry Wells" as evidence that it did not act in bad faith. (ECF No. 74 at PAGEID ## 4297-4298.)

As a preliminary matter, Plaintiffs are correct that they may allege unjust enrichment in the alternative to a breach of contract claim under a "bad faith" exception. (ECF No. 69 at PAGEID # 4147.) As this Court previously held:

> The premise of Plaintiff's argument is correct—Ohio law contains a bad-faith exception: "[A]bsent fraud, illegality, or bad faith, a plaintiff may not recover if the defendant retains the disputed money or benefit under the terms of an agreement between the parties." *Eyerman*, 967 F.2d at 222 (citing *Aultman Hosp. Ass'n v. Community Mut. Ins. Co.*, 46 Ohio St.3d 51 (1989); *Ullmann*, 147 Ohio St. 468, 72 N.E.2d at 67). But this exception pertains to bad faith (or fraud or illegality) "in the making of the agreement...." *Id.* Or, in other words, a bad-faith challenge to the existence of a valid contract may permit a plaintiff to plead breach of contract and unjust enrichment in the alternative. *See Eyerman*, 967 F.2d at 222; *see also Bihn*, 980 F.Supp.2d at 904 ("Said another way, 'unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute.'") (quoting, in part, *Carlquist v. Wells Fargo Bank, N.A.*, No. 1:12 CV 0203, 2012 WL 3815646 at *6 (N.D. Ohio Sept. 4, 2012)).

*Mitchell v. California Cas. Gen. Ins. Co. of Oregon*, No. 3:18-CV-228, 2019 WL 6877648, at *2 (S.D. Ohio Dec. 17, 2019), *report and recommendation adopted*, No. 3:18-CV-00228, 2020 WL 363340 (S.D. Ohio Jan. 22, 2020). Here, because there is a dispute as to the enforceability of the Sound Energy Leases and Plaintiffs assert bad faith with regard to the Carrizo Leases and Ascent Leases, Plaintiffs sufficiently stated an unjust enrichment claim against Ascent in the alternative to their breach of contract claim. *Kendell v. Phoenix Home Health Care Servs. Ltd.*, No. 2:15-cv-3009, 2016 WL 5871506, *2 (S.D. Ohio Oct. 7, 2016) (Ohio law "permits that where there is a dispute as to the existence or *enforceability* of a contract, a party may plead . . . unjust enrichment in the alternative" to a breach of contract claim.).

Accordingly, Plaintiffs were permitted to assert their unjust enrichment claim against Ascent, in the event that Ascent ultimately prevails on Plaintiffs' breach of contract claim. The Court, however, need not decide Plaintiffs' breach of contract claim against Ascent to find that

Ascent is entitled to summary judgment on Plaintiffs' unjust enrichment claim.  First, if the relevant Sound Energy Lease(s) had not expired, then Plaintiffs' breach of contract claim will control and Plaintiff's unjust enrichment claim will be dismissed, as "[u]nder Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn v. Fifth Third Mortg. Co.*, 980 F. Supp. 2d 892, 904 (S.D. Ohio 2013).

Alternatively, even if the relevant Sound Energy Lease(s) had expired, Plaintiffs have failed to demonstrate how Ascent has retained a benefit "under circumstances where it would be unjust to do so without payment." *Cook*, 961 F.3d at 858.  Assuming, *arguendo*, that Ascent's "access to Plaintiffs and Sound Energy's lessors" was a "great benefit," Ascent was not directly conferred such a benefit by Plaintiffs, but rather by Carrizo.  More importantly, however, if the relevant Sound Energy Lease(s) had expired, then Plaintiffs' ORRI would have expired as well, so Ascent would not have owed anything to Plaintiffs.  Even if Ascent was acting "surreptitiously," as Plaintiffs contend, Ascent's actions would not have any impact on Plaintiffs' ORRIs, as those would have expired with the Sound Energy Leases.

For these reasons, Ascent has demonstrated that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law on Plaintiffs' unjust enrichment claim.  Accordingly, Ascent's Motion is **GRANTED** as to Count Seven.

## 2. Carrizo (Count Seven)

In Carrizo's Motion, Carrizo argues that "the benefit [Plaintiffs] seek to recover from Carrizo is the money Ascent paid for the Sound Energy [L]eases and the Carrizo Leases."  (ECF No. 43 at PAGEID # 1108.)  Carrizo argues that "Ohio law requires Plaintiffs to prove that they—and not a third party—were the source of the benefit."  (*Id.* (internal citation omitted)) Carrizo also argues that "Plaintiffs' unjust enrichment claim is also barred by the existence of

express contracts governing their relationship with Carrizo." (*Id.*)  In response, Plaintiffs argue that "Carrizo has acted in bad faith by attempting to washout Plaintiffs' ORRI through the Top Leases and is therefore not entitled to summary judgment on the unjust enrichment claims[.]" (ECF No. 70 at PAGEID ## 4265-4266.)  Plaintiffs emphasize that Carrizo "opt[ed] . . . to operate in the shadows," and "[t]he dispute could, and should, have been avoided had Carrizo been honest and forthcoming from the outset." (*Id.*)  In Reply, Carrizo stresses that Plaintiffs' claim is precluded by the existence of express contracts between Plaintiffs and Carrizo, and challenges Plaintiffs' bad faith argument by citing Plaintiff Levengood's deposition testimony that "I don't think [Carrizo] had malicious intent." (ECF No. 73 at PAGEID ## 4282-4283 (citing ECF No. 50 at PAGEID # 180).)

Carrizo's arguments are well taken.  First, the Court agrees with Carrizo that Plaintiffs have failed to affirmatively show (or allege) what benefit they conferred upon Carrizo.  To that end, the Court finds persuasive Carrizo's argument, relying on Plaintiff Levengood's undisputed testimony, that "the benefit [Plaintiffs] seek to recover from Carrizo is the money Ascent paid for the Sound Energy [L]eases and the Carrizo Lease." (ECF No. 43 at PAGEID # 1108 (citing ECF No. 43-3 at PAGEID ## 1262-1263 (confirming that "the way you would determine the amount by which Carrizo [unjustly] benefitted is the amount that Ascent paid Carrizo for the Sound Energy [L]eases and the Carrizo [L]eases.")).)

Instead of presenting any evidence to challenge Carrizo's argument, Plaintiffs' responded by suggesting (for the first time in this litigation) that Carrizo's "access to Plaintiffs and Sound Energy's lessors" was a "great benefit, which Carrizo would not have had but for Plaintiffs and Sound Energy," which is the same argument Plaintiffs raised against Ascent. (ECF No. 70 at PAGEID # 4266.)  Again, even assuming, *arguendo*, that Carrizo's access to lessors constitutes a

"benefit," there is no dispute that Carrizo provided valuable consideration for such access when it entered into the subject leases. While the access may have been a "great benefit," Plaintiffs have wholly failed to show how it could possibly have been unjust for Carrizo to retain such a benefit in light of the parties' freely negotiated contracts. *See Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 739 (N.D. Ohio 2006) (entering summary judgment for Defendant on an unjust enrichment claim where Defendant "did not receive any benefit for which it did not compensate Plaintiff with valuable consideration pursuant to a freely negotiated contract.") (citations omitted); *Andersons, Inc. v. Consol, Inc.*, 348 F.3d 496, 502 (6th Cir. 2003) ("[T]he plaintiff must show enrichment that is *unjust.* It is insufficient for the plaintiff to prove merely that he conferred a benefit upon the defendant.") (emphasis in original) (citing *Katz v. Banning,* 84 Ohio App.3d 543, 617 N.E.2d 729, 735 (1992)).

To that end, the Court also agrees with Carrizo that Plaintiffs' unjust enrichment claim is precluded by the existence of the express contracts between Plaintiffs and Carrizo. (ECF No. 43 at PAGEID ## 1108-1109; ECF No. 73 at PAGEID # 4282.) As discussed above, while there may be a dispute about the validity of a contract between Plaintiffs and Ascent, there is no dispute about the existence and enforceability of the contracts between Plaintiffs and Carrizo. Moreover, as previously discussed, "[u]nder Ohio law, a plaintiff may not recover under the theory of unjust enrichment when an express contract covers the same subject." *Bihn*, 980 F. Supp. 2d at 904. Although Plaintiffs allege unjust enrichment as an alternative theory of liability to their breach of contract claim, there is no dispute about the existence of the contracts between Plaintiffs and Carrizo (and there is no dispute about Carrizo's performance thereunder). *Id.* ("Said another way, under Ohio law, 'unjust enrichment claims may be pled in the alternative to a breach of contract claim when the existence of a contract is in dispute.'") (quoting *Carlquist v.*

*Wells Fargo Bank, N.A.*, No. 1:12-cv-0203, 2012 WL 3815646, at *6 (N.D. Ohio Sept. 4, 2012));
*Mitchell*, 2019 WL 6877648, at *2 ("Because Plaintiff's unjust-enrichment claims covers the
same ground as her breach-of-contract claim, and because California Casualty does not dispute
the existence of the parties' insurance contract, Ohio's general rule applies and forecloses
Plaintiff from proceeding with a claim for unjust enrichment.").

For these reasons, Carrizo has demonstrated that there is no genuine dispute as to any
material fact and it is entitled to judgment as a matter of law on Plaintiffs' unjust enrichment
claim. Accordingly, Carrizo's Motion is **GRANTED** as to Count Seven.

### D. Quiet Title (Count One)

For Count One, "Plaintiffs request this Court to quiet title to the Plaintiffs' ORRI by
finding that the Plaintiffs' ORRI is valid, covers the Carrizo Leases and Ascent Leases, and is
binding on the Defendants." (ECF No. 18 at PAGEID # 585, ¶ 53.) Plaintiffs also request "a
full accounting as to what interest each of the Defendants claims to presently own in any of the
Sound Energy Leases, the Carrizo Leases, and the Ascent Leases, a full accounting of all oil and
gas wells drilled under those leases, a full accounting of all production obtained by the
Defendants under those leases, and a full accounting of all payments that Defendants made or
should have made under those leases. Furthermore, Plaintiffs are entitled to award of all royalties
which should have been made to the Plaintiffs, but that were not made." (*Id.* at ¶ 54.)

Accordingly, this claim is necessarily dependent on the outcome of Plaintiffs' other
claims – especially, as discussed above, Plaintiffs' breach of contract claim against Ascent
(Count Two). If Ascent's expiration theory is correct, for example, then Plaintiffs cannot prevail
on Count One or Count Two against Ascent, as Plaintiffs' ORRI will have expired. On the other
hand, if Ascent's expiration theory is incorrect, then Plaintiffs may prevail on these claims.

Accordingly, it is premature at this juncture for the Court to award summary judgment to Ascent or to Plaintiffs on either claim.

The same is not true, however, for Carrizo. Because the Court has found that Plaintiffs cannot prevail on any of their claims against Carrizo, it necessarily holds that Plaintiffs cannot prevail on their quiet title action against Carrizo. Whether the ORRI is valid and covers the Carrizo Leases and Ascent Leases is of no import to Carrizo, and by Plaintiffs' own admissions, Carrizo owes Plaintiffs no additional royalty payments.

For these reasons, it is premature to determine whether Plaintiffs or Ascent are entitled to summary judgment on Count One. It is not, however, premature for the Court to find that Carrizo is entitled to summary judgment on Plaintiffs' claim for quiet title against Carrizo. Accordingly, Ascent's Motion is **DENIED WITHOUT PREJUDICE** as to Count One, and Carrizo's Motion is **GRANTED** as to Count One.

E.     **Slander of Title Claims (Count Four)**

A slander of title claim can be "brought against any one who falsely and maliciously defames the property either real or personal, of another, and thereby causes him some special pecuniary damage or loss." *Cuspide Properties, Ltd. v. Earl Mech. Servs.*, 2015-Ohio-5019, ¶ 36, 53 N.E.3d 818, 828 (citing *Green v. Lemarr,* 139 Ohio App.3d 414, 430, 744 N.E.2d 212 (2d Dist. 2000)). To prevail on a slander of title claim, the claimant must prove "(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with reckless disregard of its falsity; and (4) the statement caused actual or special damages." *Id.* (citing *Green* at 430–431).

Again, the Court does not need to determine whether Ascent's expiration theory is correct to find that Plaintiffs indisputably have failed to make a *prima facie* showing of slander of title.

42

Even assuming, *arguendo*, that Plaintiffs' theory of expiration is correct, the critical problem with Plaintiffs' slander of title claim is that Plaintiffs have produced **no** evidence demonstrating that Ascent made **any** statements "with malice or . . . with reckless disregard of [their] falsity." *Id.*  Plaintiffs argue that Ascent "failed to conduct any legitimate due diligence as to paying quantities prior to entering into the Top Leases" because Ascent relied on production volumes provided to the Ohio Department of Natural Resources, and concludes that "Ascent did not act in good faith in its unilateral decision that some of the Sound Energy Leases had allegedly expired."  (ECF No. 69 at PAGEID # 4146.)  Even taking Plaintiffs' conclusory argument at face value, Plaintiffs have failed to show malice or reckless disregard.  The Sixth Circuit has held that "[a] failure to investigate . . . even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard," because "there must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication."  *West v. Media Gen. Operations, Inc.*, 120 F. App'x 601, 622 (6th Cir. 2005) (citations and quotations omitted).  "Thus, the failure to investigate, alone, will not support a finding of actual malice, but the purposeful avoidance of the truth may do so."  *Id.*  (citation omitted).  Plaintiffs have failed to provide any evidence that Ascent "entertained serious doubts as to the truth," or purposefully avoided the truth, of their due diligence findings.

For these reasons, Ascent has demonstrated that there is no genuine dispute as to any material fact and it is entitled to judgment as a matter of law on Plaintiffs' slander of title claim. Accordingly, Ascent's Motion is **GRANTED** as to Count Four.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Partial Summary Judgment (ECF No. 41) is **DENIED**; Defendant Carrizo (Utica) LLC's Motion for Summary Judgment (ECF No. 43)

is **GRANTED**; and Defendant Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 44) is **GRANTED IN PART**, as to Counts Four, Five, and Seven, and **DENIED IN PART WITHOUT PREJUDICE** to refiling regarding Counts One and Two.

Should either party choose to re-file a motion for summary judgment as to Count Two, such motion shall be filed on or before **APRIL 23, 2021**, and the briefing shall confirm which of the Sound Energy Leases are relevant to the Londonderry Wells; which of the Sound Energy Leases are relevant to the Carrizo Leases; which of the Sound Energy Leases are relevant to the Ascent Leases; which of the Sound Energy Leases are relevant to the Hoop Unit; which other parcels are at issue, if any, and to which Sound Energy Leases such parcels are subject; and which of the Sound Energy Leases are otherwise relevant to Plaintiffs' breach of contract claim against Ascent. Further, the parties shall attach every Sound Energy Lease cited. The default briefing schedule set forth in Local Rule 7.2(a)(2) shall apply thereafter. The Court urges the parties to address any of the other discrepancies referenced above, to the extent they are relevant to the breach of contract analysis.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendant Carrizo (Utica) LLC. on all counts against it, and in favor of Defendant Ascent Resources – Utica, LLC on Counts Four, Five, and Seven.

Finally, Plaintiffs' Motion to Strike Portions of Ascent Resources – Utica, LLC's Motion for Summary Judgment (ECF No. 71) is **DENIED**.

**IT IS SO ORDERED.**

Date: March 23, 2021  _/s/ Elizabeth A. Preston Deavers_

ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE